**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MARK THORP**
**1029 16th Street NE**
**Washington DC 20002**
**(202) 438-0394**

**v.**

**THE DISTRICT OF COLUMBIA**
**Mayor Muriel Bowser**
**John A. Wilson Building**
**1350 Pennsylvania Avenue NW**
**Washington, DC 20004**

**Serve:**
**Office of the Attorney General**
**Claims Unit, 6th Floor**
**441 4th Street NW**
**Washington, DC 20001**

**and**

**CONRAD Z. RISHER**
**441 Fourth Street NW**
**Washington DC 20001**

**and**

**BRUCE R. TRAINA**
**5333 Connecticut Ave NW**
**Washington DC 20015**

**and**

**MICHAEL TILGHMAN**
**441 Fourth Street NW**
**Washington DC 20001**

**Defendants**

**1:18-cv-01071**

**COMPLAINT**

This is a complaint for monetary damages for the unlawful disclosure of tax return information, injury to the Plaintiff's person and reputation, deprivation of civil rights under color of state authority and for such injuries caused by the Defendants and other unknown persons by a conspiracy to deprive the Plaintiff of his civil rights and to injure him in retaliation for the exercise of such civil rights.

## STATEMENT REGARDING D.C. CODE § 12-309

On April 30, 2018, the undersigned attorney mailed via United States Postal Service Priority Mail, postage prepaid and electronic delivery notification requested, tracking number 9405511899560970060066, to the District of Columbia Office of Attorney General as agent for the Mayor, documents providing statutorily sufficient notice of all claims herein, including the dates and locations of such wrongful conduct to the extent presently known to the Plaintiff.

## JURISDICTION

1. The Plaintiff offers causes of action arising under 42 U.S.C. § 1983 for being subjected to a deprivation of his rights, privileges, and/or immunities secured by the Constitution and applicable law, by persons acting under color of the authority of the Government of the District of Columbia.

2. The Plaintiff further offers causes of action arising under 42 U.S.C. § 1985 for injuries resulting from two or more persons conspiring to prevent, by force, intimidation or threat, any person from discharging the duties incumbent of an office of the United States where such duties are required to be performed, and two or more

persons conspiring to deter, by force, intimidation, or threat, the Plaintiff's participation in proceedings in this Court, and to injure the Plaintiff's person and property on account of his having attended such proceedings, and to impede, hinder, obstruct, defeat the due course of justice with intent to deny the Plaintiff the equal protection of the laws, and to injure the Plaintiff and his property for lawfully enforcing his rights to the equal protection of the laws. Such Defendants named herein have so conspired, and acted affirmatively in furtherance of the object of such conspiracy.

3. The Plaintiff further demands damages under 26 U.S.C. § 7431 (a)(2) for the unlawful disclosure of his federal tax return information by the District of Columbia and its employees.

4. Under 28 U.S.C. § 1331, the United States District Court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, including 26 U.S.C. § 7431, 42 U.S.C. §§ 1983 and 1985.

5. The Plaintiff further asks this Court to declare his rights and other legal relations.

6. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq.*, the United States District Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

7. The Plaintiff offers additional causes of action arising under common law, including Abuse of Process.

8. Under 28 U.S.C. § 1367, the United States District Court shall have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9. The Plaintiff's common law claims are so related to the Federal law claims that they form part of the same case or controversy.

10. The Plaintiff asserts that certain of these common law claims are necessarily “federal” common law claims required to fill minor gaps in existing federal law.

11. “The inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts.” *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 593 (1973). The United States District Court therefore has 28 U.S.C. § 1331 federal question jurisdiction for such federal common law questions herein.

**PARTIES**

12. Plaintiff Mark Thorp is a natural person, a resident and citizen of the District of Columbia.

13. The District of Columbia is a municipal corporation capable of being sued.

14. Defendant Conrad Risher is an employee of the District of Columbia and a resident of the District of Columbia. He is sued in his individual capacity.

15. Defendant Bruce Traina is an employee of the District of Columbia. He is sued in his individual capacity.

16. Defendant Michael Tilghman is an employee of the District of Columbia. He is sued in his individual capacity.

17. All of the events complained of herein occurred within the District of Columbia.

**RELEVANT FACTS**

18. In 2006, an allegation was sustained by the United States District Court in Massachusetts that Defendant Traina, then an Internal Revenue Service supervisor, unlawfully retaliated against IRS Special Agent Anthony Sibilia because Sibilia testified against another IRS supervisor who had been sexually harassing a co-worker. *Sibilia v. Snow*, 2006 U.S. Dist. LEXIS 76409, 2006 WL 2990479 (D. Mass. October 20, 2006).

19. Non-party Kathy Henderson is an Advisory Neighborhood Commissioner, an elected neighborhood representative to the District of Columbia government.

20. From 2011 to 2014, Plaintiff Thorp's company, JVLHC, LLC, was a plaintiff in a lawsuit against Henderson for libel and slander. *JVLHC, LLC, et al. v. Henderson*, 2011 CA 3696 B (D.C. Sup. Ct. 2011). Prior to the filing of the lawsuit, Henderson repeatedly published defamatory statements regarding JVLHC, LLC and others on internet “blogs”, falsely claiming JVLHC, LLC to be in violation of the law and a danger to the public. Henderson's allegations included repeated unfounded reports to the Metropolitan Police Department that the Plaintiff was a drug dealer.

21. On June 26, 2014, the Superior Court entered judgment for JVLHC, LLC and against Henderson for $97,789.31 in damages, $36,994.27 in attorney’s fees,

$1,901.77 in attorney's fees awarded by a previous order dated June 18, 2012, $707.52 in court costs, and additional costs of $3,600.00 and $600.00 in expert witness fees.

22. Such judgment was recorded with the District of Columbia Recorder of Deeds on July 1, 2014.

23. On August 29, 2014, the Clerk of the Superior Court issued a writ of *fieri facias* directing the United States Marshal to seize and sell Henderson's goods and chattels in execution of the judgment.

24. Henderson owned a condominium unit at 2440 16th Street NW, Unit 119 as a rental property.

25. On information and belief, shortly after proceedings in execution began for the 16th Street property, unknown members of the executive staff of the Metropolitan Police Department of the District of Columbia attempted to interfere and delay the execution of judgment by asserting inappropriate political influence upon the United States Marshal.

26. As a result, the writ of execution was returned to the Clerk of the Superior Court unexecuted.

27. JVLHC, LLC sued in this Court for mandamus and declaratory judgment against the Marshal, *JVLHC, LLC v. Hughes*, 1:14-cv-01747.

28. As a result of the unlawful interference of the unknown persons of the executive staff of the Metropolitan Police Department, the judicial sale of the property in execution was delayed by six months.

29. As a result of such unlawful interference and subsequent delay, Henderson was able to record a post-seizure fraudulent deed to cloud title to the property.

30. As a result of such unlawful interference, subsequent delay, and the fraudulent deed, a *bona fide* purchaser at the Marshal's auction of the property later repudiated the sale and left the property to the Plaintiff otherwise unsold.

31. As a result of the repudiated sale, the Plaintiff has been financially injured.

32. Such injuries are ongoing to the present day.

33. From the filing of the *Hughes* lawsuit and until May 2015, uniformed members of the Metropolitan Police Department posted themselves in front of the Plaintiff's residence on an ongoing basis, in a nearly continuous act of intimidation towards him.

34. The Plaintiff was repeatedly stopped and seized on the street by members of the Metropolitan Police Department Fifth District Vice Unit and subjected to non-consensual searches of his person and vehicle without probable cause.

35. On the morning of February 4, 2015, a public notice by the United States Marshal, published in the Washington Times Newspaper, indicated for the first time that Henderson's property would be sold at auction.

36. On that morning, Metropolitan Police Department Officer Frederick Onoja began writing parking tickets on the Plaintiff's automobiles legally parked on private property near his home and Metropolitan Police Department Officer William Rapp began taunting the Plaintiff by yelling into the windows of his residence.

37. Shortly thereafter on that same day, members of the Metropolitan Police Department's Fifth District Vice Unit simultaneously smashed down three doors of the

Plaintiff's residence in a “no knock” execution of a search warrant, purportedly and solely for an allegation of animal cruelty regarding the Plaintiff's dog.

38. Such warrant was devoid of probable cause that any offense had occurred.

39. Such warrant was devoid of probable cause that any evidence of any offense would be found inside the Plaintiff's home.

40. Such warrant was based solely upon the false statements of Metropolitan Police Officers Onoja and Rapp.

41. No knock executions of search warrants are made solely for the purpose of inhibiting drug dealers from destroying evidence of such drug trade.

42. Such no knock executions of warrants are categorically prohibited in the District of Columbia.

43. Despite immediately finding upon entry the Plaintiff's pedigreed dog to be in good health and temperament and without any evident injury or mistreatment, members of the Metropolitan Police Department seized the Plaintiff's dog as “evidence”.

44. After finding no evidence of animal cruelty, and despite immediately finding items enumerated in the search warrant in plain view, members of the Metropolitan Police Department began opening closed containers within the Plaintiff's residence, and began “field testing” capsules they found therein for illegal drugs.

45. Such searches for illegal drugs were the true motivation for the search of the Plaintiff's home.

46. Members of the Metropolitan Police Department used false information to obtain the animal cruelty search warrant such that they could search the Plaintiff's home

for illegal drugs, despite having no probable cause to believe illegal drugs would be found in the home.

47. Such searches by members of the Metropolitan Police Department of closed containers which could not contain the items enumerated in the animal cruelty search warrant exceeded the limited scope of the defective animal cruelty warrant authorized by the Superior Court.

48. Members of the Metropolitan Police Department were specifically informed beforehand by the Animal Control Officer who obtained the warrant that such searches would exceed the limited scope of the warrant.

49. After claiming one such capsule found inside a closed container to have tested positive for amphetamines, members of the Metropolitan Police Department sought an additional search warrant from the Superior Court for the capsules already obtained through the initial illegal search of the Plaintiff's residence.

50. The Plaintiff had at the time of his arrest, a current and legal prescription for at least one amphetamine based pharmaceutical.

51. Such pharmaceutical containers listing the prescription information were found in plain view in the Plaintiff's home by the Fifth District Vice Unit prior to members of the Metropolitan Police Department seeking an additional search warrant.

52. The existence of the prescription was known to members of the Metropolitan Police Department at the time they caused to be made an application for the additional search warrant for the amphetamines. The Plaintiff's prescription bottles were evident in plain view in his home during the search.

53. Members of the Metropolitan Police Department knowingly withheld this knowledge of the existence of the prescription from the judicial officer considering issuance of the additional search warrant.

54. The Plaintiff was arrested and charged by members of the Metropolitan Police Department with animal cruelty and possession of illegal drugs.

55. Such charges lacked any factual basis of lawfully obtained evidence supporting probable cause.

56. Members of the Metropolitan Police Department knowingly withheld knowledge of the existence of the prescriptions from the prosecutor reviewing the criminal charges at papering.

57. The cash proceeds of the Plaintiff's two nightclub businesses found in his residence were seized by members of the Metropolitan Police Department without explanation and were not returned for twelve months following the raid.

58. Such cash was seized without any lawful authority.

59. Following the illegal raid on the Plaintiff's home, the District of Columbia acknowledged that it was in possession of an amount equal to or greater than $53,326.00 in United States currency seized from the Plaintiff's home.

60. Other valuable property of the Plaintiff, including jewelry and postal money orders, were stolen at the time of the raid.

61. No receipt was given to the Plaintiff for the currency seized from his home or for any of the other property seized from his home during the illegal raid.

62. Numerous items of the Plaintiff's property, including nearly all of his furniture, was destroyed by Metropolitan Police Officers at the time of the raid.

63. The Plaintiff's dog was seized by the Washington Humane Society at the direction of members of the Metropolitan Police Department.

64. Such dog was seized without any lawful authority.

65. At the direction of the Defendant District of Columbia, the Washington Humane Society refused to release the dog to anyone including the Plaintiff.

66. The dog was deprived of exercise and companionship of the Plaintiff.

67. The Plaintiff was deprived of the companionship of his dog.

68. The dog was physically injured and maltreated while seized.

69. The dog was maintained in facilities in close contact of diseased and dangerous animals while seized.

70. The Plaintiff incurred financial injuries in the form of veterinary bills paid to treat his injured dog following its release.

71. The Plaintiff was injured of his person and mind by deprivation of the companionship of his dog.

72. On February 5, 2015, the United States Attorney's Office informed members of the Metropolitan Police Department that the dog was of no evidentiary value to the prosecution and could be released. The District of Columbia failed to inform the Plaintiff of this fact until midnight on February 13, 2015.

73. The Plaintiff was subjected to burdensome and humiliating conditions of pre-trial release which included drug testing and weekly interviews with court officials.

74. The Plaintiff immediately moved to modify such conditions of pre-trial release.

75. Such conditions of pre-trial release were perpetuated unnecessarily in part by false statements of members of the Metropolitan Police Department to the United States Attorney's Office.

76. Such conditions of pre-trial release were perpetuated unnecessarily in part by undue political pressure from unknown members of the Metropolitan Police Department command staff upon the United States Attorney's Office.

77. Members of the Metropolitan Police Department withheld from the United States Attorney an entire set of crime scene search photographs from the United States Attorney.

78. Such withheld photographs demonstrated the dog to have been recovered in good health less than ten minutes after the start of the raid.

79. Such withheld photographs demonstrated the Plaintiff's freezer to still be closed some forty minutes after the start of the raid.

80. Such withheld photographs demonstrated dog bowls and dog food to be in plain view in the Plaintiff's kitchen.

81. Members of the Metropolitan Police Department instead presented a completely different set of photographs to the United States Attorney as the only crime scene photographs from the raid.

82. Such second set of photographs were staged by Vice Officers more than three hours after the original raid on the Plaintiff's home.

83. Such set of photographs intentionally omitted all of the exculpatory evidence in the original set of photographs described above.

84. Following the raid on the Plaintiff's home, all of the body camera recordings of the raid were deleted by unknown persons from the District of Columbia's computer servers.

85. Following the raid on the Plaintiff's home, all of the Fifth District station video recordings for that day were deleted by unknown persons from the District of Columbia's computer servers.

86. Following the raid on the Plaintiff's home, all of the video recordings from a pole camera at 16th and Levis Streets NE were deleted by unknown persons from the District of Columbia's computer servers.

87. Each of these deletions occurred after the command staff of the Fifth District received specific preservation instructions in writing from Metropolitan Police Department Headquarters staff.

88. The criminal case was terminated in the Plaintiff's favor on May 22, 2015.

89. The criminal case was terminated after the United States Attorney was informed that the raid of the Plaintiff's home occurred within hours of the posting of the first public advertisement of the United States Marshal's sale of Advisory Neighborhood Commissioner Kathy Henderson's home in execution of the Plaintiff's judgment against her.

90. The criminal case was terminated after the United States Attorney was informed that the raid was initiated and supervised by Ramey Kyle, a Metropolitan Police Department official previously engaged in a sexual relationship with the Plaintiff's ex-girlfriend.

91. The criminal case was terminated after the United States Attorney was informed that the affidavit for the search warrant was for the Plaintiff's home, to search for a dog which one of the Metropolitan Police Officers specifically ordered the Plaintiff to place inside the home just prior to seeking a search warrant.

92. The criminal case was terminated after the United States Attorney was informed that there was no physical evidence whatsoever that the Plaintiff abused his dog and that there was exhaustive documentary and testimonial veterinary evidence that the Plaintiff did not abuse his dog.

93. The criminal case was terminated after the United States Attorney was informed that in the morning hours leading up to the raid on the Plaintiff's home, Metropolitan Police Officers Onoja and Rapp wrote multiple parking tickets on the Plaintiff's motor vehicles legally parked around his home and taunted him through the windows of his home.

94. The criminal case was terminated after the United States Attorney was informed that the Plaintiff was charged solely with possession of amphetamines, yet the officers on the scene of the raid were in possession of the Plaintiff's prescriptions for Adderall, an amphetamine, in greater quantity than what was recovered from his home. Such information was improperly withheld from the judicial officer making the probable cause determination for the search warrant.

95. The criminal case was terminated after the United States Attorney was informed that members of the Metropolitan Police Department applied for a warrant to search the Plaintiff's home for illegal drugs, but only after they had entered the Plaintiff's

freezer in his home outside the scope of the animal abuse warrant, opened closed containers found in the freezer and field tested materials found in those containers.

96. The criminal case was terminated after the United States Attorney was informed that the Metropolitan Police Department had seized some eighty thousand dollars in cash from the Plaintiff's home, despite the Plaintiff having two lawful cash-only businesses in close proximity to his home.

97. The animal control officer who applied for the first warrant later reported that Officers Rapp and Onoja refused to testify as to their claims which were the basis for the warrant.

98. The currency seized from the Plaintiff's home was at no time subject to any evidentiary or other prosecutorial hold.

99. Such currency was seized without probable cause to believe that it was used in furtherance of or as proceeds of the manufacture or distribution of a controlled substance as prohibited by D.C. Code § 48-904.01(a).

100. At the time of the seizure, members of the Metropolitan Police Department possessed affirmative information that the currency was not used in furtherance of or as proceeds of the manufacture or distribution of a controlled substance as prohibited by D.C. Code § 48-904.01(a).

101. The source of the Plaintiff's currency, and the complete lack of any kind of nefarious activity associated with it was well known to the Defendants.

102. The automated teller machines within the Plaintiff's nightclubs dispensed approximately $720,000 in cash during operating hours in the year prior to the raid.

103. Such automated teller machine transactions then created thousands of small money deposits into the Plaintiff's bank accounts each identifying the distinct transaction at the automated teller machine.

104. Such cash was used by thousands of different bank account holders to purchase beverages in the Plaintiff's nightclubs.

105. The cash received at the nightclubs in the purchases was then used by the Plaintiff to refill the automated teller machines again. Thus, this small amount of the same cash was endlessly circulated through the same machines for these transactions and the Plaintiff's revenue was derived from the bank deposits from the card holders.

106. Cash not in twenty dollar denominations brought into the nightclubs by the patrons could not be used to refill the Plaintiff's automated teller machines.

107. Of the $53,426 in currency claimed to have been seized by the Vice Officers from the Plaintiff's home, only $4,576 was in denominations less than fifty dollars. Thus, more than ninety percent of the currency seized from the Plaintiff's home was in denominations that could be received in ordinary transactions at the Plaintiff's establishments but yet could never be reused to refill the Plaintiff's automated teller machines or for making change at his establishments.

108. The Plaintiff routinely had to withdraw large amounts of twenty dollar bills from his bank to compensate for such large denomination currency he received but could not recirculate through the automated teller machines.

109. The Plaintiff routinely had to withdraw smaller denominations of currency from his bank to make change at his establishments.

110. All such transactions were thoroughly detailed in the bank statements later provided to the District of Columbia in discovery.

111. The District of Columbia made no notice to the Plaintiff of any civil forfeiture proceeding regarding the currency seized from his home by Certified Mail, Registered Mail or personal service of process.

112. The District of Columbia made no notice whatsoever as to any civil forfeiture proceeding regarding the currency seized from the Plaintiff's home prior to August 31, 2015. ECF Docket # 27-3.

113. The time for any such notice permitted under law passed on or about February 18, 2015.

114. Such notice provided to the Plaintiff in August 2015 was fabricated and backdated to February 12, 2015, so that the District of Columbia could falsely claim lawful procedural due process afforded to the Plaintiff.

115. Despite a repeated demand to the District of Columbia for the return of such currency to the Plaintiff, the District of Columbia refused to do so.

116. Such currency was unlawfully held by the District of Columbia until January 21, 2016, the day before a response to the Plaintiff's demand for an injunction returning the cash was due.

117. The deprivation of this currency for nearly a year injured the Plaintiff.

118. The return of the currency was specifically and intentionally timed to inflict the maximum injury upon the Plaintiff while avoiding any immediate judicial repercussions for the District of Columbia's illegal conduct.

119. District of Columbia attorneys refused for more than a year to provide documents in response to the Plaintiff's proper discovery and FOIA requests.

120. The District of Columbia possessed some eight thousand documents responsive to both the discovery requests in the 2015 lawsuit and the Plaintiff's FOIA requests. The District of Columbia illegally withheld such documents until ordered to produce them by Superior Court Judge Steven Wellner on October 28, 2016.

121. Upon production of such documents, nearly every single document produced in response was falsely marked “Confidential” by District of Columbia attorneys including Defendant Risher.

122. Such markings were made solely in order to hinder public disclosure of the misconduct of the District of Columbia officials and employees involved in the raid on the Plaintiff's home.

123. District of Columbia attorneys including Defendant Risher unlawfully withheld exculpatory investigative documents regarding the falsified civil forfeiture proceedings of the Plaintiff's currency.

124. One such exculpatory investigative document was unknown to the Plaintiff until its existence was inadvertently exposed during a deposition on June 1, 2017.

125. Following the inadvertent disclosure of the existence of such documents by the deponent, Defendant Risher made false claims of privilege regarding the documents and refused to produce them.

126. Such false claims of privilege were made solely to improperly hinder the disclosure of the contents such documents to the Plaintiff, the Court and the public.

127. Such documents contained false and defamatory statements made by members of the Metropolitan Police Department regarding the Plaintiff.

128. On August 9, 2017, Defendant Risher demanded that the Plaintiff produce, *inter alia*, his 2015 income tax returns.

129. On August 17, 2017 and again on August 23, 2017, Defendant Risher demanded that the Plaintiff produce his tax returns beyond the 2014 returns already produced to the District of Columbia in discovery.

130. The Plaintiff provided bank statements and sales tax returns to Risher for both 2014 and 2015 demonstrating the cash flow and sales described above.

131. On August 28, 2017, this Court denied Risher's demands for production of the Plaintiff's 2015 income tax returns.

132. Having no experience in accounting or financial investigations, Defendant Risher had no understanding whatsoever of the legitimate nature of Plaintiff's businesses or his finances.

133. Risher, believing himself to be investigating purported money laundering by the Plaintiff, despite overwhelming evidence to the contrary, then sought and received such tax information from unknown persons at the District of Columbia Office of Tax and Revenue.

134. Despite Risher having graduated from law school only in 2015, the District of Columbia failed to provide training or supervision to Risher. Upon hiring Risher, the District of Columbia immediately placed him as lead counsel in defense of a highly complex civil rights lawsuit when Risher had no prior litigation experience whatsoever.

135. The District of Columbia failed to provide sufficient safeguards for the Plaintiff's tax return information such that it could not be illegally accessed and disclosed.

136. The District of Columbia failed to provide sufficient training and supervision for personnel at the Office of Tax and Revenue such that this tax return information could not be illegally accessed and disclosed.

137. On December 20, 2017, the Plaintiff moved for partial summary judgment in the 2015 lawsuit.

138. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that the Plaintiff's home had been raided absent probable cause.

139. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that members of the Metropolitan Police Department persisted in searching the Plaintiff's home long after the limited purpose of the search had been accomplished.

140. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that the Plaintiff had been arrested for animal cruelty and his dog seized absent probable cause.

141. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that tens of thousands of dollars in currency had been seized from the Plaintiff's home absent probable cause.

142. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that members of the Metropolitan Police Department repeatedly withheld known exculpatory evidence from the Courts and other police

officials that would have otherwise demonstrated the Plaintiff's lawful source of his currency.

143. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that the District of Columbia tendered false evidence to this Court that laws regarding forfeiture procedures had been complied with in service upon the Plaintiff.

144. Such Motion for Partial Summary Judgment disclosed to this Court with affirmative and unrebutted evidence that the second warrant was based solely upon evidence illegally obtained by the Metropolitan Police Department Officers who raided the Plaintiff's house.

145. On January 8, 2018, the District of Columbia hired Defendant Traina as a Criminal Investigator for the Office of the Chief Financial Officer.

146. Under D.C. Code Title 47, Chapter 41, Criminal Investigators for the Office of the Chief Financial Officer only have authority to investigate tax evasion and fraudulent tax statements.

147. Under D.C. Code § 47–4301, a three year statute of limitations is imposed upon claims for tax evasion, running from the time of the filing of the return.

148. Under D.C. Code § 47–4108, a three year statute of limitations is imposed upon criminal prosecutions for violations of District of Columbia tax laws.

149. The District of Columbia failed to make an adequate inquiry into Traina's background to include a review of publicly available records of the Massachusetts federal court proceedings in which the EEOC retaliation claim against Traina was sustained in 2006.

150. On March 2, 2018, the District of Columbia and Defendant Risher filed a Cross Motion for Summary Judgment.

151. In this Motion, the District of Columbia and Defendant Risher falsely accused the Plaintiff, in direct conflict with the District of Columbia's own records, of not having a dog license.

152. In this Motion, the District of Columbia and Defendant Risher falsely accused the Plaintiff, in direct conflict with the evidence before the Court, that he “assaulted” his dog.

153. In this Motion, the District of Columbia and Defendant Risher falsely accused the Plaintiff, in direct conflict with the evidence already before the Court, of “fleeing” into his home.

154. In this Motion, the District of Columbia and Defendant Risher falsely accused the Plaintiff of somehow “assaulting” police officers simply by refusing to speak to them.

155. In this Motion, the District of Columbia and Defendant Risher claimed a Metropolitan Police Department Officer wrote “lots” of tickets when he had never written a ticket on any of the Plaintiff's vehicles in the two years prior to the day of the raid and had only written seven parking tickets anywhere in the preceding three months.

156. In this Motion, the District of Columbia and Defendant Risher claimed that all the money seized from the Plaintiff's home had been accounted for and returned to the Plaintiff.

157. In this Motion, the District of Columbia and Defendant Risher falsely alleged that the animal control officer who applied for the first warrant was a “law enforcement officer”.

158. In this Motion, the District of Columbia and Defendant Risher falsely claimed that Ramey Kyle's “training and experience” allowed him to somehow distinguish between unmarked capsules purportedly being contraband and various nutritional supplements having an absolutely identical appearance.

159. In this Motion, the District of Columbia and Defendant Risher provided an incorrect figure for the 2014 income for the Plaintiff's business JVLHC, LLC.

160. The figure provided for JVLHC, LLC was in fact the 2015 income for the Plaintiff's business JVLHC, LLC.

161. Risher inadvertently quoted the 2014 income figure for JVLHC, LLC from the Plaintiff's 2015 income tax return, which he could have only illegally obtained from the District of Columbia Office of Tax and Revenue.

162. The number quoted by Risher for the 2014 income for JVLHC, LLC could not have been gained from any source other than the Plaintiff’s 2015 income tax return.

163. The Plaintiff replied to the District of Columbia's Motion on March 16, 2018.

164. In his reply to the Motion, the Plaintiff amply demonstrated that members of the Metropolitan Police Department had searched the contents of the freezer without a warrant and without any claim of exigent circumstances.

165. In his reply to the Motion, the Plaintiff amply demonstrated that the body camera footage of the raid had been inexplicably deleted despite a preservation instruction being provided to police officials just three weeks after the raid.

166. In his reply to the Motion, the Plaintiff amply demonstrated that a large stack of negotiable Postal Service money orders in his desk was clearly visible in the crime scene photographs, but never made it to the police station and police records.

167. In his reply to the Motion, the Plaintiff amply demonstrated that the District of Columbia would be vicariously liable for the complete absence of training or supervision of the animal control officers.

168. In his reply to the Motion, the Plaintiff amply demonstrated that Metropolitan Police Department Lieutenant Ramey Kyle was repeatedly promoted by the police department despite a history of civil rights violations.

169. In his reply to the Motion, the Plaintiff amply demonstrated that Metropolitan Police Department Officer Onoja who called animal control and falsely claimed the Plaintiff beat his dog is presently named in no less than five civil rights lawsuits in this Court.

170. In his reply to the Motion, the Plaintiff demonstrated that the canned language used in the second warrant affidavit used *verbatim* passages from another warrant now the subject of a lawsuit presently in this Court involving the same false claims of “training and experience” to overcome a lack of probable cause.

171. In his reply to the Motion, the Plaintiff pointed out to the Court the incorrect figures stated for the 2014 income of the Plaintiff's businesses.

172. On March 23, 2018, Defendant Risher moved this Court for additional time to respond to the Plaintiff's March 16, 2018 filing.

173. On information and belief, upon the Plaintiff pointing out the error in the 2014 income stated by Risher and the District of Columbia, Risher discovered that he had inadvertently used the information regarding the Plaintiff's 2015 taxes he illegally obtained from Office of Tax and Revenue for the 2014 figures.

174. Upon reporting to the Office of Tax and Revenue that Risher's illegal conduct had been disclosed to the Plaintiff, Traina and Risher conspired to retaliate against the Plaintiff and cover up the illegal conduct.

175. On March 28, 2018, Defendant Traina served the Plaintiff with a series of summonses from the District of Columbia Office of Taxation and Revenue demanding he produce to Traina *fifteen years* of financial records for six different companies, including companies defunct for more than a decade.

176. Traina served similar summonses upon the Plaintiff's accountant and banks for the Plaintiff's financial records.

177. Upon such service, Traina claimed to be investigating the Plaintiff for “money laundering”.

178. Traina has no authority to conduct any investigation for “money laundering”.

179. Risher has no authority to conduct any investigation for “money laundering”.

180. The District of Columbia has no authority to prosecute any offense of “money laundering”.

181. On March 30, 2018, the Plaintiff moved this Court to enjoin the illegal conduct of Risher and Traina.

182. By the filing of formal court documents on that date, the misconduct by Risher and Traina was disclosed to senior attorneys and policymakers for the District of Columbia.

183. Risher completed his briefing of the Motion and submitted it to the Court late in the evening of April 1, 2018, even though the deadline was not until the following day.

184. On April 2, 2018, Risher suddenly stopped responding to emails from the Plaintiff and from the Court.

185. On April 2, 2018, Defendant Tilghman made a false statement to this Court's law clerk that Risher was on “scheduled leave”. Risher had specifically stated to the Plaintiff's attorney three days earlier that he would be in the office on April 2, 2018.

186. Such statement by Tilghman was intended to thwart the Court's inquiry into the alleged illegal conduct by Risher and Traina by falsely claiming that Risher was now unavailable to speak to the Court.

187. At the direction of policymakers for the District of Columbia, Defendant Tilghman subsequently refused to make Risher or Traina available for the service of subpoenas for this Court's April 20, 2018 Motion Hearing.

188. At the direction of policymakers for the District of Columbia, Defendant Tilghman instead moved to quash the properly issued subpoenas for Risher and Traina.

189. At the direction of, and with the knowledge and consent of, policymakers for the District of Columbia, Traina persisted with his illegal retaliatory investigation after such investigation was brought to the attention of such policymakers.

**COUNT I**
**First Amendment Retaliation.**

190. Paragraphs 1-189 above are incorporated by reference as if fully set forth and repeated herein.

191. By his 2015 lawsuit, the Plaintiff has petitioned this Court for a redress of grievances against the government, to include the violent raid upon his home without lawful cause, his unlawful arrest, the unlawful seizure of his property and the destruction of his property without compensation.

192. Such allegations include the falsification of oaths by government actors and the falsification and suppression of evidence by such actors before judicial authorities.

193. Such allegations amount to a multitude of constitutional and civil rights violations committed under color of state law by the persons identified in the Plaintiff's pleadings.

194. Such allegations are indisputably a matter of public concern as demonstrated by multiple news reports on these events.

195. Defendants Traina and Risher have initiated and caused to be initiated new criminal investigation proceedings against the Plaintiff less than two weeks after some of the most serious of the allegations against the 2015 lawsuit Defendants were demonstrated to this Court by competent evidence.

196. Such proceedings are intended to punish and retaliate against the Plaintiff for his disclosures of governmental misconduct and his attempts to seek remedies through civil process.

197. Such retaliation by the Defendants has deprived the Plaintiff of his right of redress and other forms of freedom of speech guaranteed by the First Amendment.

198. Such retaliation by the Defendants is intended to inhibit other members of the public from attempting to seek remedies against the District of Columbia government through civil process.

199. The Plaintiff has been injured as a direct, proximate and consequential result of these Defendants' illegal conduct.

200. The Plaintiff will continue to be irreparably harmed absent the Court's intervention.

201. Defendant District of Columbia has condoned, authorized and facilitated this illegal conduct by its decision makers.

202. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Traina and Risher.

203. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

**COUNT II**
**Fifth Amendment Due Process Deprivation I**

204. Paragraphs 1-203 above are incorporated by reference as if fully set forth and repeated herein.

205. By the 2015 lawsuit, the Plaintiff has sought post deprivation remedies following his illegal arrest and the seizure and destruction of his property.

206. Defendants Traina and Risher interfered with these proceedings by punishing the Plaintiff for his continued prosecution of these claims by a new unfounded and burdensome criminal investigation.

207. Such unfounded and burdensome criminal investigation is intended to improperly divert the Plaintiff's limited resources away from the prosecution of the claims in the 2015 lawsuit as it heads to trial.

208. Such criminal investigation is being employed to conduct extra-judicial discovery in defense of the Plaintiff's claims in violation of this Court's discovery orders, the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

209. Such criminal investigation is being employed to deprive the Plaintiff of legal representation in defense of third party summonses also issued in violation of this Court's discovery orders, the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

210. Such criminal investigation is being employed to harass the Plaintiff.

211. Such criminal investigation is being employed to unlawfully pressure the Plaintiff to settle a collateral dispute.

212. By such unlawful conduct, these Defendants deprive the Plaintiff of Due Process guaranteed under the Fifth Amendment and other applicable law.

213. The Plaintiff has been injured as a direct, proximate and consequential result of these Defendants' illegal conduct.

214. The Plaintiff will continue to be irreparably harmed absent the Court's intervention.

215. The Defendant District of Columbia has condoned, authorized and facilitated this illegal conduct by its decision makers.

216. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Traina and Risher.

217. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

**COUNT III**
**Fifth Amendment Due Process Deprivation II**

218. Paragraphs 1-217 above are incorporated by reference as if fully set forth and repeated herein.

219. By the filing of his Motion for a preliminary injunction and for leave to file a supplemental complaint in the 2015 lawsuit, the Plaintiff has sought post deprivation remedies following the retaliatory acts of Defendants Risher and Traina.

220. Defendant Tilghman unlawfully interfered with these proceedings by making false statements regarding the availability of Risher to the Court's law clerk outside of any legal paper or official hearing.

221. By such unlawful conduct, Tilghman deprives the Plaintiff of Due Process guaranteed under the Fifth Amendment and other applicable law.

222. The Plaintiff has been injured as a direct, proximate and consequential result of Tilghman's illegal conduct.

223. The Defendant District of Columbia has condoned, authorized and facilitated this illegal conduct by its decision makers.

224. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Tilghman.

225. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

## COUNT IV
## Fourth Amendment Deprivation

226. Paragraphs 1-225 above are incorporated by reference as if fully set forth and repeated herein.

227. Defendant Traina is employing administrative summonses to conduct a criminal investigation.

228. Such summonses for compulsory production of private papers are searches and seizures regulated under the Fourth Amendment.

229. Under the Fourth Amendment, the right of the people to be secure in their papers against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause.

230. Such administrative summonses have been issued absent probable cause.

231. Such administrative summonses have been issued absent review and approval by a neutral and detached magistrate.

232. Such administrative summonses further amount to extra-judicial general warrants and writs of assistance prohibited by the Fourth Amendment.

233. Such administrative summonses demand more than a decade of records outside of the applicable statutes of limitations.

234. The Plaintiff's tax returns, bank statements and deposition transcripts already in the possession of the Defendants at the time of the issuance of the summonses completely refute any suggestion of money laundering or tax evasion.

235. The Plaintiff has been injured as a direct, proximate and consequential result of Defendant Traina's illegal conduct.

236. The Plaintiff will continue to be irreparably harmed absent the Court's intervention.

237. The Defendant District of Columbia has condoned, authorized and facilitated this illegal conduct by its decision makers.

238. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Traina.

239. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

**COUNT V**
**Sixth Amendment Deprivation**

240. Paragraphs 1-239 above are incorporated by reference as if fully set forth and repeated herein.

241. By employing administrative summonses to conduct a criminal investigation, Defendant Traina violates the Plaintiff's right to counsel in a criminal proceeding.

242. The Plaintiff has been injured as a direct, proximate and consequential result of Defendant Traina's illegal conduct.

243. The Plaintiff will continue to be irreparably harmed absent the Court's intervention.

244. The Defendant District of Columbia has condoned, authorized and facilitated this illegal conduct by its decision makers.

245. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Traina.

246. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

## COUNT VI
## Fifth Amendment Self Incrimination Deprivation

247. Paragraphs 1-246 above are incorporated by reference as if fully set forth and repeated herein.

248. By employing administrative summonses to conduct a criminal investigation, Defendant Traina violates the Plaintiff's right against compelled self-incrimination.

249. The Plaintiff has been injured as a direct, proximate and consequential result of Defendant Traina's illegal conduct.

250. The Plaintiff will continue to be irreparably harmed absent the Court's intervention.

251. The Defendant District of Columbia has condoned, authorized and facilitated this illegal conduct by its decision makers.

252. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Traina.

253. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

**COUNT VII**
**Conspiracy to deprive Civil Rights**

254. Paragraphs 1-253 above are incorporated by reference as if fully set forth and repeated herein.

255. In response to the 2015 lawsuit and the 2018 Motion for Summary Judgment, Defendants Traina and and Risher have conspired to deter, by force, intimidation, or threat, the Plaintiff's participation in proceedings in this Court, and to injure the Plaintiff's person and property on account of his having attended such proceedings, and to impede, hinder, obstruct, defeat the due course of justice with intent to deny the Plaintiff the equal protection of the laws, and to injure the Plaintiff and his property for lawfully enforcing his rights to the equal protection of the laws. Such Defendants named herein have so conspired, and acted affirmatively in furtherance of the object of such conspiracy including the perpetuation of the deprivation of his property.

256. Such conspiracy violates, *inter alia*, 42 U.S.C. § 1985.

257. The Plaintiff has been directly, proximately and consequentially injured as result of the Defendants' illegal conduct.

258. Defendant District of Columbia has permitted this illegal conduct by negligent hiring, training, retention and supervision of Traina and Risher.

259. Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

**COUNT VIII**
**Abuse of Process**

260. Paragraphs 1-259 above are incorporated by reference as if fully set forth and repeated herein.

261. Defendant Traina has issued a series of summons under color of District of Columbia law demanding the Plaintiff produce some fifteen years of financial records.

262. Traina claimed to the Plaintiff that he was investigating an allegation of “money laundering”, a federal offense which Traina is not authorized to investigate and the District of Columbia is not authorized to prosecute.

263. Traina and Risher used these summonses for an ulterior motive, to punish the Plaintiff for the prosecution of these civil claims and to interfere with his further prosecution thereof.

264. Traina and Risher used these summonses for an ulterior motive, to pressure the Plaintiff to settle the 2015 lawsuit.

265. Traina and Risher used these summonses to circumvent limitations on discovery previously imposed upon the Defendants by this Court and to deprive the Plaintiff of legal representation.

266. The summonses issued by Traina further serve to hinder any investigation into Traina and Risher's illegal conduct regarding their unauthorized access of the Plaintiff’s tax return information and the disclosure thereof.

267. Traina and Risher used these summonses to divert the Plaintiff's limited resources away from prosecution of his claims in the 2015 lawsuit.

268. The Plaintiff has been injured as a direct and proximate cause of Traina's and Risher's illegal conduct.

**COUNT IX**
**Violation of the Tax Equity and Fiscal Responsibility Act of 1982**

269. Paragraphs 1-268 above are incorporated by reference as if fully set forth and repeated herein.

270. Defendants Traina and Risher have inspected and disclosed the Plaintiff's federal tax return information in violation of Section 6103 of the Internal Revenue Code.

271. The District of Columbia by negligence or overt act has permitted this illegal disclosure of such records.

272. Under 26 U.S.C. § 7431 (a)(2), the Plaintiff may bring a civil action for damages in a District Court of the United States.

273. The Plaintiff demands the greater of $1,000 for each act of unauthorized inspection and disclosure of his tax return information or the actual damages sustained by the Plaintiff as result of the unauthorized inspection and disclosures, plus punitive damages and costs, including attorney's fees.

274. Such civil action is now brought within two years of the date of discovery of the unauthorized inspection and disclosures.

WHEREFORE Plaintiff Mark Thorp requests an Order of this Court,

a. Declaring the summonses issued by Defendant Traina to be unlawful;

b. Enjoining the Defendants from enforcing such summonses;

c. Enjoining the Defendants from further retaliatory acts against Thorp;

d. Enjoining the Defendants from further acts intended to interfere with Thorp's participation in the 2015 lawsuit.

e. Attorney's fees as provided by, *inter alia*, 42 U.S.C. § 1988 (b) and the inherent authority of this Court;

f. An award of monetary damages, interest and costs according to proof under applicable law;

g. All such other relief as the Court finds appropriate.

There being an inadequate remedy at law, the Plaintiff demands equitable relief.

**JURY DEMAND**

The Plaintiff demands a jury trial on all matters so triable.

Respectfully submitted, this seventh day of May, 2018.

Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
email: matt@lefande.com
Attorney for the Plaintiff
DC Bar #475995