# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK THORP,

    Plaintiff,

       v.

THE DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 18-1071 (JEB)

## MEMORANDUM OPINION

For the last several years Plaintiff Mark Thorp has waged a lengthy legal battle against the District of Columbia over what he claims was an unlawful 2015 search of his home and arrest for drug and animal-cruelty charges. Although this Court recently granted summary judgment to the District, see Thorp v. D.C. (Thorp I), 2018 WL 2364291 (D.D.C. May 24, 2018), Thorp is not waving a white flag. Instead, on May 7, 2018, he filed a new suit against, *inter alia*, the city's lawyers, asserting a farrago of counts arising from the D.C. Office of Tax Revenue's issuance of tax summonses to twelve corporate entities affiliated with him and his nightclub business. Plaintiff contends that, rather than being issued for permissible civil purposes, these summonses are in fact part of a criminal investigation launched against him as retaliation for filing the prior suit.

Framing the summonses as the latest fusillade in a comprehensive scheme to interfere with the prosecution of his earlier case, Thorp asserts that OTR is acting in bad faith and has gone far beyond the scope of its civil authority under D.C. Code § 47-4310. Plaintiff alleges that the summonses therefore violate his First, Fourth, Fifth, and Sixth Amendment rights, as well as constituting a conspiracy to deprive him of his civil rights, an abuse of process, and a violation of

1

the Tax Equity and Fiscal Responsibility Act of 1982.  Relying on his constitutional claims, Thorp has now moved for a preliminary injunction, asking this Court to enjoin the District from enforcing the OTR summonses.

As it indicated at oral argument, the Court remains puzzled why Plaintiff has chosen to file a 37-page lawsuit in federal court instead of simply challenging OTR's summonses or its authority in the D.C. Superior Court.  In any event, the Court concludes that such a pre-enforcement action challenging state tax administration is not a proper matter for the federal system.  Under the doctrine of comity, Thorp's myriad claims regarding OTR's actions belong instead in Superior Court.  This Court, consequently, concludes that Plaintiff cannot show a likelihood of success on the merits sufficient for a preliminary injunction to issue, as he cannot even show a likelihood that this Court should hear his case.  The Court finds, additionally, that Thorp cannot demonstrate the requisite likelihood of irreparable harm for injunctive relief.  Here, the OTR summonses at issue remain pending and unenforced.  Plaintiff's parade of horribles regarding the impact of the records requests therefore is largely speculative, and his alleged injuries far from certain.  As the Court thus concludes that Thorp's claims do not warrant the "extraordinary remedy" of a preliminary injunction, it will deny his Motion.

## I.     Background

In February 2015, Thorp filed suit against the District of Columbia and Metropolitan Police Department Lieutenant Ramey Kyle, alleging, *inter alia*, that the police illegally searched and seized his home and stole certain valuables.  On May 24, 2018, this Court granted summary judgment for Defendants.  See ECF No. 117, Case No. 15-195 (Order).  The Court rejected Thorp's Fourth Amendment claims, as well as his false-arrest, abuse-of-process, and negligent-supervision counts.  See Thorp I, 2018 WL 2364291, at *1, 13.

On May 7, 2018, less than three weeks before the issuance of the Opinion in Thorp I, Plaintiff filed this suit against counsel for Defendants in that case – Assistant Attorneys General Conrad Risher and Michael Tilghman – OTR Agent Bruce Traina, and the District itself. This latest Complaint addresses a series of tax summonses for books and records related to various entities allegedly controlled by Thorp – summonses that he claims are in fact directly related to the proceedings in Thorp I. Plaintiff asserts in his Complaint that the summonses were improperly issued as part of a criminal investigation that was launched to retaliate against him for filing suit against the District and to prevent him from litigating the 2015 matter. Under this retaliation theory, Thorp brings a series of constitutional, statutory, and common-law claims.

Specifically, he alleges in Count I that Defendants Traina and Risher violated his First Amendment rights by having "initiated and caused to be initiated new criminal investigation proceedings," which "are intended to punish and retaliate against the Plaintiff for his disclosures of governmental misconduct and his attempts to seek remedies through civil process." Compl., ¶¶ 195-96. Such conduct, Plaintiff contends, "has deprived [him] of his right of redress and other forms of freedom of speech guaranteed by the First Amendment." Id., ¶ 197.

Thorp's second count also alleges a constitutional violation – namely, a Fifth Amendment due-process violation arising from Defendants' "unfounded and burdensome criminal investigation," which Thorp asserts is "being employed to harass [him]" and "to unlawfully pressure [him] to settle a collateral dispute." Id., ¶¶ 207-211. His third count is similarly based on the Fifth Amendment, as he alleges that Defendant Tilghman violated his due-process rights when he "unlawfully interfered with the[] proceedings by making false statements regarding the availability of [Defendant] Risher to the Court's law clerk outside of any legal paper or official hearing." Id., ¶ 220. This contention is seemingly based on an alleged April 2,

2018, conversation between Tilghman and a law clerk of this Court in which Thorp contends that Tilghman falsely stated that "Risher was on 'scheduled leave'" when "Risher had specifically stated to the Plaintiff's attorney three days earlier that he would be in the office on April 2." Id., ¶ 185. This "false statement," Plaintiff asserts, "was intended to thwart the Court's inquiry into the alleged illegal conduct by Risher and Traina." Id., ¶¶ 185-86.

Count IV of the Complaint moves on to the Fourth Amendment, alleging that "Defendant Traina is employing administrative summonses to conduct a criminal investigation" and that "[s]uch summonses for compulsory production of private papers are searches and seizures regulated under the Fourth Amendment." Id., ¶¶ 227-39. Counts V and VI are similarly directed at the constitutionality of the OTR request, claiming that "[b]y employing administrative summonses to conduct a criminal investigation," Defendant Traina violated Thorp's Sixth Amendment "right to counsel in a criminal proceeding," id., ¶ 241, and that the summonses also "violate[] [his] right against compelled self-incrimination" under the Fifth Amendment. Id., ¶ 248.

Count VII is brought under 42 U.S.C. § 1985 and alleges that Traina and Risher, "[i]n response to the 2015 lawsuit and the 2018 Motion for Summary Judgment," have "conspired to deter, by force, intimidation, or threat, [Thorp's] participation in proceedings in this Court, and to injure [Thorp's] person and property on account of his having attended such proceedings." Id., ¶ 255. Count VIII alleges "abuse of process," asserting that Traina and Risher used the administrative summonses "for an ulterior motive, to punish [Thorp] for the prosecution of [his] civil claims," "to interfere with his further prosecution thereof," and to "hinder any investigation into [Defendants'] illegal conduct." Id., ¶¶ 263-66. Finally, Count IX alleges a violation of the federal Tax Equity and Fiscal Responsibility Act of 1982, claiming that the District "by

negligence or overt act has permitted" the unlawful inspection and disclosure of Thorp's federal-tax-return information.  Id., ¶¶ 270-71.  As relief, Plaintiff seeks an Order "declaring the summonses issued by Defendant Traina to be unlawful," "enjoining the Defendants from enforcing such summonses" and from "further retaliatory acts" and "acts intended to interfere with Thorp's participation in the 2015 lawsuit," and an award of monetary damages.  Id. at 37.

Three days after filing his Complaint, Plaintiff sought a temporary restraining order, which the Court denied on May 11, 2018.  See Minute Order.  Thorp also sought a preliminary injunction, see ECF No. 5 (PI Mot.), which Defendants opposed.  See ECF No. 13 (Opp. to PI).  After the hearing on the PI Motion, this Court offered both parties the opportunity to submit a "declaration regarding the purpose(s) of the summonses."  Minute Order of June 4, 2018.  Both sides submitted supplemental declarations in response to this Order, see ECF Nos. 16 (Def. Supp. Decl.), 17 (Pl. Supp. Decl.), and Plaintiff's Motion for injunctive relief is now ripe for review.

## II.     Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. NRDC, 555 U.S. 7, 24 (2008).  A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest."  League of Women Voters of United States v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 505 (D.C. Cir. 2016)).  "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted.'"  Hospitality Staffing Solutions, LLC v. Reyes, 736 F.

Supp. 2d 192, 197 (D.D.C. 2010) (citing <u>Chaplaincy of Full Gospel Churches v. England</u>, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in <u>Winter</u>, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. <u>Davis v. PBGC</u>, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009); <u>see</u> <u>Davenport v. Int'l Bhd. of Teamsters</u>, 166 F.3d 356, 360-61 (D.C. Cir. 1999). This Circuit has hinted, though not held, that <u>Winter</u> – which overturned the Ninth Circuit's "possibility of irreparable harm" standard – establishes that "likelihood of irreparable harm" and "likelihood of success" are "'independent, free-standing requirement[s].'" <u>Sherley v. Sebelius</u>, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (quoting <u>Davis</u>, 571 F.3d at 1296 (Kavanaugh, J., concurring)); <u>see</u> <u>League of Women Voters</u>, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after <u>Winter</u>). Unresolved, too, is the related question of "whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a 'serious legal question' on the merits." <u>Aamer v. Obama</u>, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (citation omitted).

Regardless of the extent to which showings of irreparable harm and success on the merits can be diminished, some fundamentals of the four-factor test bear reiterating. Because "the basis of injunctive relief in the federal courts has always been irreparable harm," <u>Chaplaincy of Full Gospel Churches</u>, 454 F.3d at 297 (internal quotation marks and citation omitted), a plaintiff must, at minimum, "demonstrate that irreparable injury is <u>likely</u> in the absence of an injunction," not just that injury is a "possibility." <u>Winter</u>, 555 U.S. at 22; <u>see</u> <u>Davis</u>, 571 F.3d at 1292. It is clear, moreover, that where the plaintiff can show <u>neither</u> harm nor success, it is plain that no

relief is warranted.  See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016).

## III.    Analysis

Defendants allege both jurisdictional and substantive defenses to Thorp's Motion.  As to the former, the District contends that Plaintiff is *per se* unable to show a likelihood of success on the merits as this Court in fact has no authority to hear his case.  The city additionally disputes the substantive merits of Plaintiff's allegations against the named parties.  Next, Defendants question whether the harm alleged is truly irreparable.

### A.    Likelihood of Success on the Merits

In the preliminary-injunction context, "the 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." Obama v. Klayman, 800 F.3d 559, 565 (D.C. Cir. 2015).  Put otherwise, the "affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's reaching the merits." Nat'l Wildlife Fed'n v. Burford, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring and dissenting).  In asserting that Thorp cannot clear this bar, Defendants submit two threshold arguments against his case being heard before this Court – *viz.,* the Federal Tax Injunction Act (TIA) and the doctrine of comity as applied to issues of state tax law.  The Court addresses each in turn – beginning with the TIA because it is jurisdictional – and then considers the merits of the claims.

#### 1.  *Tax Injunction Act*

According to Defendants, Thorp's suit cannot proceed here because it falls within the scope of the TIA.  In applicable part, this statute provides that "[t]he district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a

plain, speedy, and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The District argues that Plaintiff's challenge to the tax summonses fits within this list of actions

barred in the district court. Specifically, Defendants point to the legal authority under which the

summonses were issued by OTR: D.C. Code § 47-4310. This statute authorizes the Office to

seek "books, records, or other data" via summons for certain types of tax inquiries:

> For the purpose of ascertaining the correctness of a return; making
> a return where none has been made; determining the liability of a
> person or real property for a tax imposed under this title;
> determining the liability at law or in equity of a transferee or
> fiduciary of a person for a tax under this title; collecting tax; or
> inquiring into an offense connected with the administration or
> enforcement of a law

D.C. Code § 47-4310(a).

Under the District's reasoning, because the statute authorizes summonses for the purpose

of "determining the liability of a person or real property for a tax," the provision "is therefore

central to [the District's] 'collection' of taxes." Opp. at 5. Defendants argue that, accordingly,

the "[]TIA prohibits this Court from enjoining OTR's 'collection' efforts" and that Plaintiff's

challenge "is impermissible in this forum." Id. Thorp disputes such characterization. He asserts

that he is not seeking "an injunction against the assessment, levy, or collection of any tax

whatsoever," but instead "an injunction to stop the unconstitutional use of [] civil summonses in

his criminal investigation." Reply at 7. Such injunctive relief, Plaintiff argues, falls outside the

bounds of the TIA.

On this point, the Court agrees with Thorp. The TIA does not bar federal-court

jurisdiction over this case, as an injunction would not restrain the "assessment, levy, or collection

of any tax under State law." As the Supreme Court explained in Direct Mktg. Ass'n v. Brohl,

135 S. Ct. 1124 (2015), "[T]he TIA is not keyed to all activities that may improve a State's

ability to assess and collect taxes." Id. at 1131.  In that case, the Court determined that a

challenge to a Colorado notice-and-reporting statute fell outside of the scope of the Act because

the provision did not pertain to the "assessment, levy, or collection" of state taxes.  Id. at 1130-

31.  In reaching this conclusion, the Court engaged in a lengthy exegesis as to what, specifically,

those three terms mean.  "Assessment," the Court found, "refers to the official recording of a

taxpayer's liability, which occurs after information relevant to the calculation of that liability is

reported to the taxing authority." Id.  "Levy," the Court held, is "limited to an official

governmental action imposing, determining the amount of, or securing payment on a tax," and

"collection" is the "act of obtaining payment of taxes due." Id.  Beyond these discrete acts, the

Court concluded, the TIA did not bar any and all suits that might affect a state's system of

taxation.  Id. at 1131-32.  Colorado's notice-and-reporting requirements, the Court found, related

to a "phase of tax administration procedure" antecedent to the acts covered by the TIA – namely,

the "information gathering" of materials "relevant to tax liability." Id. at 1129.  The Court

therefore concluded that enforcement of the state statute fell outside the bounds of the plain

language of the TIA.

Here, too, the disputed statute relates to a taxpayer's liability, but under Direct

Marketing, its enforcement does not fall within the scope of the TIA.  Although the District

asserts that its summons authority under D.C. Code § 47-4310 serves, in part, to "determin[e] the

liability of a person or real property for a tax imposed" and thus is part and parcel of its

collection of taxes, see Opp. at 5, this argument falls short in light of the Court's interpretation of

"collection" in Direct Marketing.  "Collection," the Court made clear, "occurs after a formal

assessment" and is a "separate step in the taxation process from assessment and the reporting on

which assessment is based." 135 S. Ct. at 1130-31.  The language of § 47-4310 demonstrates

that the provision relates not to such post-assessment collections but, instead, is keyed to the "information gathering" phase of D.C.'s tax administration. Indeed, as Officer Traina states in his Declaration, the summons authority is used to "investigate tax liability and possible tax fraud." ECF No. 16 (Declaration of Bruce R. Traina), ¶ 2. Just as with the Colorado reporting statute at issue in <u>Direct Marketing</u>, this component of the District's tax administration is not an aspect of "assessment," "levy," or "collection" as defined by the Supreme Court. The Court therefore concludes that the District's tax-summons authority is not within the realm of government actions addressed by the TIA, and that the Act does not bar this Court from hearing this case.

2. *Comity*

The Court turns next to Defendant's alternative threshold argument that the doctrine of comity precludes Plaintiff's challenge to a D.C. tax provision in federal court. According to the District, "Plaintiff's suit constitutes an impermissible effort to assert §1983 actions against the validity of state tax systems in federal court[]." Opp. at 4. Comity, Defendants contend, "bars challenges to District of Columbia taxes" in federal court and thus Thorp's instant suit. <u>Id.</u> at 4. Plaintiff does not respond directly to the comity argument in his Reply, but instead broadly refers to the authority of this Court to order prospective relief to remedy unconstitutional government actions – including, allegedly, his claims regarding the administrative tax summonses. <u>See</u> Reply at 2-4. Under Thorp's theory, this Court's equitable power to enter an injunction is reason enough for his case to be properly brought before the federal judiciary. <u>Id.</u>

The Court disagrees. It is clear from the Complaint that Thorp is attacking, at bottom, the issuance of a tax summons pursuant to the D.C. Code. Elsewhere in his papers and at oral argument, moreover, Plaintiff suggested that he is in fact challenging the summons provision

itself as *per se* unconstitutional, arguing that it gives impermissibly broad authority to OTR.  Id. at 11 (arguing that "the civil summonses issued by Defendant Traina are patently illegal" and discussing "the evident lack of procedural safeguards under District of Columbia law").  Such claims are, under the doctrine of comity, more appropriately a matter for a D.C. court.  See JMM Corp. v. District of Columbia, 378 F.3d 1117, 1125 (D.C. Cir. 2004) (holding that federal courts should "generally [] treat the District of Columbia judicial system as if it were a state system," including with respect to questions of comity).

The Supreme Court has clearly held that the concept of comity establishes a prudential rule that federal courts should refrain from hearing "claims for relief that risk disrupting state tax administration."  Levin v. Commerce Energy, Inc., 560 U.S. 413, 417 (2010).  Instead, "principles of federalism and comity generally counsel that courts should adopt a hands-off approach" with respect to such cases.  See Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 586 (1995).  This "comity constraint," the Supreme Court held in Levin, "has particular force when lower federal courts are asked to pass on the constitutionality" of state tax law.  See Levin, 560 U.S. at 421;  see also Z & R Cab, LLC v. Philadelphia Parking Auth., 616 F. App'x 527, 530-31 (3d Cir. 2015) ("deference should be given to state courts to remedy constitutional violations arising from state revenue-raising laws if adequate state remedies exist").

This comity doctrine, moreover, is "more embracive than the TIA."  Levin, 560 U.S. at 424.  Indeed, in Direct Marketing, the Supreme Court explicitly noted that its decision limiting the scope of the TIA did not resolve the question of "whether a suit such as this one might nevertheless be barred under the 'comity doctrine.'"  135 S. Ct. at 1133.  The Court, therefore, left open the possibility that actions challenging state tax administration, but falling outside the

scope of the TIA's concern with "assessment, collection, or levy," may nonetheless be inappropriate for federal court.  See Fredrickson v. Starbucks Corp., 840 F.3d 1119, 1124 (9th Cir. 2016) (noting that "comity doctrine" is broader than TIA's specific jurisdictional limits); Joseph v. Hyman, 659 F.3d 215, 218-19 (2d Cir. 2011) (noting that comity doctrine is broader in scope than TIA "because it restrains federal courts from hearing not only cases that decrease a state's revenue, but also those that 'risk disrupting state tax administration'") (quoting Levin, 560 U.S. at 417); Homewood Vill., LLC v. Unifed Gov't of Athens-Clarke Cty., 2016 WL 1306554, at *2 (M.D. Ga. Apr. 1, 2016), aff'd sub nom. Homewood Vill. LLC v. Unified Gov't of Athens-Clarke Cty., 677 F. App'x 623 (11th Cir. 2017), cert. denied sub nom. Homewood Vill. LLC v. Unified Gov't of Athens-Clarke Cty., Georgia, 138 S. Ct. 88 (2017) (noting that "[i]t is sometimes appropriate to dismiss an action in federal court due to comity concerns even when the Tax Injunction Act does not deprive the court of subject matter jurisdiction").

    This is just such a case.  Here, Plaintiff's claims are inextricably intertwined with a determination of the appropriate scope, interpretation, and application of D.C. tax law.  Although the summons provision may not invoke the jurisdictional bar of the TIA, resolving this case would require this Court to delve into sensitive matters of state tax law.  See Pl. Supp. Mem. at 10 (challenging scope of OTR's "employment of administrative examination summonses").  The summons provision under § 47-4310 addresses the authority of OTR and its agents, and it thus provides a vital mechanism by which D.C. has sought to ensure enforcement and compliance with its tax laws.  This delegation of investigational authority is clearly intertwined with the District's ability to administer its chosen system of taxation, including its capacity to determine tax liability, prevent tax fraud, and ensure that its citizens are not shirking their obligations as local taxpayers.  In light of the important role § 47-4310 plays in the District's tax scheme, the

Court determines that Thorp should "seek protection of [his] federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and [he] may ultimately seek review of the state decisions" in the Supreme Court.  See McNary, 454 U.S. at 116.

Here, Thorp has such state remedies at his disposal.  Under the tax-summons statute, "[t]he Superior Court of the District of Columbia may compel obedience of a summons under this section to the same extent as witnesses may be compelled to obey the subpoenas of the Court."  D.C. Code § 47-4310(d).  It is thus clear that Plaintiff possesses the same defenses to the execution of the tax summonses as he would to a subpoena – including allegations that they violate his constitutional rights.  See United States v. Moultrie, 340 A.2d 828, 832 (D.C. 1975) (court may quash subpoena on Fourth Amendment grounds); Matter of Kelley, 433 A.2d 704, 708 (D.C. 1981) (discussing how party can show abuse of administrative-subpoena process); Solers, Inc. v. Doe, 977 A.2d 941, 954 (D.C. 2009) (noting that First Amendment claim can be considered "[w]hen presented with a motion to quash (or to enforce) a subpoena"); Plough Inc. v. Nat'l Acad. of Scis., 530 A.2d 1152, 1157 n.6 (D.C. 1987) (determining propriety of an administrative subpoena requires "a balancing of the need for the material on the one hand against the burden imposed on the other").  Because Thorp, if faced with a motion to compel, may raise the same defenses to the enforcement of the tax summonses as he alleges in his instant Complaint, the Court finds that he has an adequate remedy in state court.

Bearing in mind the "longstanding policy to limit drastically federal interference in the administration of state taxes," California v. Grace Brethren Church, 457 U.S. 393, 419 (1982), the Court concludes that the doctrine of comity likely lands this case in D.C. court.  See Levin,

560 U.S. at 431-32 (finding that "the Ohio courts are better positioned than their federal counterparts to correct" an "allegedly unconstitutional tax scheme").

### 3. Merits of Claims

Next, the Court notes that even if comity did not bar Thorp's tax-summons claims from being heard in this Court, he would nonetheless be unable to demonstrate the necessary likelihood of success on the merits. Plaintiff asserts that "[i]t is the enjoinment of the operation and enforcement of [the tax] summonses which is the sole subject of the present Motion," Supp. Mem. at 2, and the Court will therefore address the merits of only those claims he focuses on as a basis for such injunctive relief in his briefing – namely, his First Amendment retaliation claim, his Fourth Amendment unlawful-search allegation, his Fifth Amendment due-process count, and his Fifth Amendment claim seeking protection against self-incrimination.

### a. Corporate Papers

First, Thorp's Fourth Amendment (Count IV) and Fifth Amendment self-incrimination (Count VI) claims are likely doomed by the fact that, contrary to his characterization of the summonses as requesting his "private papers," id. at 7, they were in actuality issued solely to corporate entities. As Officer Traina states in his declaration, he has "not issued any summons to Mark Thorp, but only to entity taxpayers controlled by him and to third parties." Traina Decl., ¶

7.  Indeed, the copies of the summonses submitted to the Court show that they were issued to the "Keeper of the Records" for the following entities:

- Abod & Associates, LLC

- Bank of America, NA

- Bright Gray Productions, LLC

- JVLHC, LLC

- LMW, LLC

- Navy Federal Credit Union

- PNC Bank, NA

- Samual Summer, LLC

- Samuel Sumner, LLC

- The Courson Condominium, LLC

- The Courson Condominium Association, LLC

- Wilson Lee, LLC

ECF No. 16, Attach. 2 (OTR Summonses).

Such summonses, as Traina notes, "do not seek [Plaintiff's] private papers." Traina Decl., ¶ 8.  Indeed, aside from generally describing one of the companies, JVLHC, as "Thorp's company," Compl., ¶ 20, Plaintiff does not allege sole personal ownership or control over the summonsed entities.

This means, in turn, that they do not implicate Thorp's Fourth or Fifth Amendment rights.  The Supreme Court has squarely held that "corporations can claim no equality with individuals in the enjoyment of a right to privacy," United States v. Morton Salt Co., 338 U.S. 632, 652 (1950), and thus "that the Fourth Amendment does not prohibit the obtaining of

15

information revealed to a third party and conveyed by him to Government authorities." United States v. Miller, 425 U.S. 435, 443 (1976). It follows, therefore, that "an Internal Revenue Service summons directed to a third-party bank does not violate the Fourth Amendment rights of a depositor under investigation.," id. at 444, nor do summonses issued to an accounting firm, Couch v. United States, 409 U.S. 322, 335-36 (1973), or to a corporation. See Morton Salt Co., 338 U.S. at 651–52 (stating that "neither incorporated nor unincorporated associations" are "entitled to the protection of the Fourth Amendment"); In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc., 2017 WL 3445634, at *16 n.19 (D.D.C. July 31, 2017) ("[T]he Fourth Amendment broadly permits the government to obtain an individual's records held by a third-party business through a subpoena, . . . and such a demand does not constitute a Fourth Amendment 'search.'"); United States v. Okun, 2009 WL 255624, at *4 (E.D. Va. Feb. 2, 2009), aff'd, 453 F. App'x 364 (4th Cir. 2011) ("[T]he possessory interest attendant to sole ownership of a corporation is not, in and of itself, sufficient to confer upon the owner Fourth Amendment standing.").

Courts have similarly limited the application of the Fifth Amendment's protections. This Circuit has recognized that "a custodian of corporate records can be required to produce those records" and "may not interpose a Fifth Amendment objection to the[ir] compelled production . . . even though the act of production may prove personally incriminating." United States v. Dean, 989 F.2d 1205, 1208 (D.C. Cir. 1993) (citing Braswell v. United States, 487 U.S. 99, 111-12 (1988)); see also Fed. Trade Comm'n v. Sci. Living, Inc., 150 F. Supp. 495, 500 (M.D. Pa. 1957), aff'd sub nom. Fed. Trade Comm'n. v. Sci. Living, 254 F.2d 598 (3d Cir. 1958) (Fifth Amendment "gives no protection to corporations or their officers against the production" of records). Instead, "a corporation, like other collective entities, has no [F]ifth [A]mendment

rights." <u>Dean</u>, 898 F.2d at 1208.  Similarly, "the Fifth Amendment rights of a taxpayer [are] not violated by the enforcement of a documentary summons directed to her accountant," <u>Fisher v. United States</u>, 425 U.S. 391, 397 (1976), or to his bank.  <u>See</u> <u>Singletary v. Sterling Transp. Co.</u>, 289 F.R.D. 237, 240 (E.D. Va. 2012) (finding that under Fifth Amendment "a personal right does not attach to bank records").  In such cases, the essential "ingredient of personal compulsion against an accused is lacking," and there can be no blanket Fifth Amendment claim. <u>See</u> <u>Couch</u>, 409 U.S. at 329.

These holdings render Thorp unlikely to prevail on the merits of his Fourth and Fifth Amendment claims.  Here, the tax summonses have been issued solely to banks and corporate entities – not to Plaintiff in his personal capacity.  <u>United States v. Lawrence</u>, 2014 WL 2153944, at *3 (S.D. Fla. Apr. 29, 2014) (distinguishing between subpoena for corporate records directed to petitioner in capacity as custodian of such records and in individual capacity).  Although these entities may hold records that Thorp considers sensitive, the law is clear that he cannot assert a right to privacy or protection against self-incrimination with respect to their production.

b.    *Interrelated Investigation*

Even if Thorp could somehow demonstrate that these constitutional protections do attach to the records requested, he nonetheless is unlikely to succeed in enjoining the summonses. Although there is no caselaw directly addressing the appropriate scope of a D.C. tax summons, there is ample federal precedent regarding the use of similar administrative authority. Analogizing to the standards set out in those cases, the Court concludes that, on the current

record, Plaintiff has not demonstrated that the summonses in this case are an impermissible "criminal investigation."  Reply at 7.

Under federal law, it is "undisputed that a special agent is authorized . . . to issue an Internal Revenue summons in aid of a tax investigation with civil and possible criminal consequences."  United States v. LaSalle Nat. Bank, 437 U.S. 298, 309 (1978) (internal quotation marks and citation omitted).  This result, the Supreme Court has held, "is inevitable" due to a "law enforcement system in which criminal and civil elements are inherently intertwined."  Id.  The IRS summons authority, the Court concluded, could therefore be used "in an investigation involving suspected criminal conduct as well as behavior that could [be] disciplined with a civil penalty."  Id. at 310-11.  The relevant limitation on the use of such summonses is therefore not whether they are being used to aid in the investigation of potential criminal activity, but whether they were issued in "good faith."  Id. at 313.

Here, a declaration from Officer Traina suggests that their issuance to the various entities reflects the same "interrelated criminal/civil nature of a tax fraud inquiry" as the Supreme Court recognized in LaSalle.  Id. at 314.  The declaration states that the summonses were issued pursuant to Traina's duties to "investigate tax liability and possible tax fraud by persons and entities in the District of Columbia."  Traina Decl., ¶ 2.  The purpose of these summonses, Traina states, is to "gather facts and collect evidence to determine beyond a reasonable doubt whether criminal offenses have occurred" and to allow OTR to potentially "recalculate tax liabilities and assess unpaid taxes, penalties, and interest regarding Mark Thorp and entity taxpayers controlled by him, if warranted."  Id., ¶ 5.  Such a dual-purpose investigation tracks the use of tax summonses upheld in federal court.  Cf. United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969) (holding that if "the sole purpose of the [tax] summons is to build a criminal prosecution,

18

the summons must fail") (emphasis added). Indeed, the Court in <u>LaSalle</u> held that for a tax "to be solely criminal in nature would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of [tax] penalties." 437 U.S. at 314. Plaintiff has not, on the current record, demonstrated that such an "extraordinary departure" is likely to have occurred.

This reasoning also dooms Thorp's due-process claims. Count II of the Complaint alleges that Defendants violated his Fifth Amendment rights by initiating an "unfounded and burdensome criminal investigation." Compl., ¶ 206. Repeatedly characterizing the OTR summonses as a "criminal investigation," Thorp contends that the requests are being used for ends other than a legitimate tax inquiry. <u>Id.</u>, ¶¶ 210-11. Yet, because the Court concludes that the summonses at issue are not solely directed at a "criminal investigation" and instead comply with the appropriate scope of an administrative tax subpoena, Thorp's Fifth Amendment claim based on their alleged impropriety is unlikely to prevail.

His second due-process claim (Count III), which alleges that Defendant Tilghman "unlawfully interfered" with the 2015 proceedings by "making false statements regarding the availability of Risher to the Court's law clerk," <u>id.</u>, ¶ 220, finds even less footing in the law. Perhaps unsurprisingly, Thorp can point to no authority supporting his proposition that a single statement by an attorney regarding the vacation schedule of a co-worker – much less one to a law clerk – rises to the level of a due-process violation. A moment of calendaring confusion does not a constitutional case make. Indeed, as the Court has expressed in argument on this matter, such

vindictive, *ad hominem* overreaching undermines Plaintiff's credibility and the legitimacy of this suit.

The Court last briefly turns to the remaining issue raised in his Motion – Thorp's First Amendment retaliation claim (Count I). See Mot. at 1-2. The premise here is that Defendants Traina and Risher initiated a new criminal investigation of him – in the form of issuing the disputed summonses – "less than two weeks" after new evidence regarding the 2015 lawsuit came to light. See Compl., ¶ 195. Given this timing, Thorp contends that the summonses were "intended to punish and retaliate" against him. Id., ¶ 196. The Court finds this *post hoc ergo propter hoc* argument unlikely to prevail. Plaintiff has put forward no evidence of the necessary "causal link between the exercise of a constitutional right and the adverse action taken against him." Aref v. Lynch, 833 F.3d 242, 258 (D.C. Cir. 2016). Although Thorp may find the timing of the tax investigation "startling," Mot. at 2, the District is correct that the record does not support a reasonable inference of retaliation. Thorp I was initiated three years prior to the issuance of the OTR summonses, and Plaintiff is unable to plausibly explain why Defendants only now are allegedly engaged in an attempt to retaliate against him for litigating that case. He offers no evidence of governmental intent to prevent him from accessing the courts, nor does he show any indication that Defendants sought to punish him for filing and prosecuting the earlier action. Plaintiff may be personally convinced that the administrative tax subpoenas are improperly motivated, but his speculative suspicions do not provide a factual basis for relief.

The Court therefore concludes that, as the record stands, he is unlikely to prevail on the merits of his First Amendment claim.

*  *  *

Although the Court finds that this case does not fall within the parameters of the TIA, it concludes that Thorp's claims are likely barred as a matter of comity. Because Plaintiff has not shown that this Court is in fact empowered to adjudicate his dispute, he cannot demonstrate the requisite likelihood of success for an injunction to issue. The Court concludes, moreover, that even if it <u>were</u> to consider the merits of Thorp's claims, he nonetheless would be unlikely to prevail. In such circumstances, the Court concludes that Plaintiff does not meet the threshold test for injunctive relief.

B. <u>Irreparable Harm</u>

Given <u>Winter</u>'s uncertainty over whether this is sufficient to deny the Motion, <u>see</u> Section II, *supra*, the court will move on to irreparable harm. Thorp contends that he will suffer irreparable injury from Defendants' alleged First Amendment violations, claiming that the OTR summonses will deprive him of "his right of redress and other forms of freedom of speech" in connection with litigating his 2015 suit. <u>See</u> Compl., ¶ 197. Yet, as Plaintiff himself recognizes, the "summonses remain unexecuted and pending." Supp. Mem. at 4. As discussed above, Thorp thus has remedies he may pursue in state court before any alleged injuries would occur. First, it would seem that he could move to quash the summonses in Superior Court – a response this Court would think far more straightforward than filing a § 1983 suit, TRO, and PI Motion in the federal system. Second, Thorp could oppose any attempt to compel his compliance with the tax summonses. Indeed, it was disclosed at oral argument that such a motion to compel one of the summonses has already been filed in Maryland, which Plaintiff made clear his intent to oppose.

The Court sees no reason he could not do the same with respect to the other summonses at issue, assuming that any action to enforce is ever brought.  See See v. City of Seattle, 387 U.S. 541, 544–45 (1967) (noting that an administrative subpoena "may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply").  This ability to contest the summonses in D.C. (or another state) court precludes a finding of irreparable harm.

This conclusion mirrors that of the numerous other cases holding that pre-enforcement suits challenging administrative summonses do not present the requisite risk of immediate injury. Instead, courts have repeatedly rejected claims for injunctive relief, requiring that the plaintiff bring his claims in the context of an enforcement proceeding initiated by the relevant agency. See, e.g., Jewell v. United States, 2008 WL 2705572, at *1 (E.D. Ark. July 9, 2008) (concluding that "[a]lthough the court is concerned" that IRS action "to enforce its summonses will hinder [Plaintiff's] ability to prepare for his criminal trial," his request for a TRO was "premature . . . because the IRS has initiated no action to enforce  the summonses"); Audubon Life Ins. Co. v. FTC, 543 F. Supp. 1362, 1367 (M.D. La. 1982) (issue of investigatory jurisdiction may be raised in enforcement proceedings, and thus request for injunctive relief prior to such proceedings was premature).  Requiring a plaintiff to raise his objections in an enforcement proceeding, rather than in a request for injunctive relief, does not constitute irreparable harm.  See Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau, 785 F.3d 684, 695 n.3 (D.C. Cir. 2015) (being forced to await an enforcement proceeding and to litigate in another forum where no greater burden is imposed is not irreparable injury); John Doe Co. v. Consumer Fin. Prot. Bureau, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (finding no irreparable harm when plaintiff could "raise its constitutional claim" in "an actual enforcement proceeding").  In light of the mechanisms that remain available

to Thorp to contest the enforcement of the summonses, the Court cannot conclude that he is likely to suffer irreparable harm absent injunctive relief.

Thorp's assertion that he will be irreparably injured by the "personal inconvenience" of complying with or contesting the demand for financial records also does not warrant an injunction.  See Mot. at 3.  As the Supreme Court has explained, "[T]he expense and disruption of defending [oneself]" is not an irreparable harm.  See FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 244 (1980); Audubon Life, 543 F. Supp. at 1369 ("Legal expenses and business losses from contesting the legality of an agency investigation thus do not constitute irreparable harm."); see also Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").  Much like taxes, the "annoyance of litigation is part of the social burden of living under government," and thus "neither potential investigation by [an agency] nor the bringing of an enforcement action present irreparable injuries."  John Doe Co. v. Consumer Fin. Prot. Bureau, 235 F. Supp. 3d 194, 203 (D.D.C. 2017).

The purpose of a preliminary injunction is to prevent "certain and great" injury of such imminence that there is a "clear and present" need for relief.  See Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (internal quotation marks and citation omitted).  Here, given the remaining routes by which Thorp may still attempt to prevent the disclosure of requested tax materials, the Court concludes that he is unable to show the requisite specter of irreparable harm. Although Plaintiff certainly feels aggrieved by the OTR summonses and has his own theories as to their motivation, he cannot demonstrate with any certainty that he will be injured absent an injunction.

**IV.     Conclusion**

Having found that Thorp can demonstrate neither a likelihood of success on the merits nor irreparable harm, the Court need not consider the other factors for preliminary injunctive relief.  See Ark. Dairy Co-op Ass'n, Inc. v. USDA, 573 F.3d 815, 832 (D.C. Cir. 2009) (citing Apotex, Inc. v. FDA, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006)); Archdiocese of Wash. v. Wash. Metro. Area Transit Auth., 281 F. Supp. 3d 88, 99 (D.D.C. 2017).  Instead, it determines based on the first two prongs that Plaintiff has not demonstrated that this "extraordinary remedy" is warranted here.  The Court will therefore deny Plaintiff's Motion for a Preliminary Injunction. A contemporaneous Order to that effect will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: June 22, 2018